USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIGHT KIDS NYC, INC. and BIGE DORUK, individually on behalf of all others similarly situated,

            Plaintiffs,

-against-

QUARTERSPOT, INC.,

           Defendant.

1:20-cv-9172 (MKV)

ORDER GRANTING
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

      This case involves a loan that is purportedly usurious under New York law. Plaintiffs Bright Kids NYC Inc., ("Bright Kids") and Bige Doruk (together, "Plaintiffs") bring this action as a putative class seeking a declaratory judgment that all loan agreements entered into by QuarterSpot, Inc. are void for usury. Second Am. Compl. [ECF No. 30] ¶ 95. After Plaintiffs filed their Second Amended Complaint, QuarterSpot filed a Motion to Dismiss [ECF No. 31] and supporting Memorandum of Law [ECF No. 32]. Plaintiffs then filed a Memorandum of Law in Opposition [ECF No. 36] and QuarterSpot filed its Reply [ECF No. 38]. For the reasons stated below, the Court grants QuarterSpot's Motion to Dismiss.

## BACKGROUND

      As it must, the Court views the facts in the light most favorable to Plaintiffs, the parties opposing the Motion to Dismiss. Plaintiff Bige Doruk is the owner of Plaintiff Big Kids NYC, Inc. Second Am. Compl. ¶ 16. Bright Kids is a "New York small business" that tutors "children of all ages." Second Am. Compl. ¶¶ 10, 33. Defendant QuarterSpot "is an online lending company that provides short-term loans to small business all across the country." Second Am. Compl. ¶ 25. Plaintiffs allege that QuarterSpot engages in a business practice through which it "force[s] [its] small business victims to sign loan agreements" that are fraudulent and predatory. Second Am.

1

Compl. ¶¶ 1, 6. As part of its purported plot, QuarterSpot allegedly "falsely represent[s] that the transaction[s] took place in the Commonwealth of Virginia, and that QuarterSpot is located in Virginia." Second Am. Compl. ¶ 6.

Plaintiffs contend that this is an attempted end-run around New York's usury laws. Second Am. Compl. ¶ 5. Specifically, Plaintiffs allege that after imposing impermissibly high interest rates on loans, thus allegedly ruining businesses that cannot repay them, QuarterSpot seeks recovery in jurisdictions that do not have usury laws. *See* Second Am. Compl. ¶¶ 27-29.

Bright Kids entered multiple loan agreements with QuarterSpot. *See* Second Am. Compl. ¶¶ 35, 64. The first two agreements were entered into in early 2014. Second Am. Compl. ¶ 35. The total loan value provided by those agreements was $75,000 and $25,000 at 65.4% interest per year. Second Am. Compl. ¶¶ 36, 48 ,50, 62. Bright Kids then "entered into an additional agreement" for $150,000 in late 2017. Second Am. Compl. ¶¶ 64, 65, (the "2017 Loan Agreement"). Plaintiffs state that the annual interest rate on that loan is either 31% (the amount on the term sheet) or 35.6% (the actual amount as they calculate it). Second Am. Compl. ¶¶ 70-76.[1]

In 2019, QuaterSpot sued Plaintiffs in the Circuit Court for Arlington County, Virginia for breach of contract alleging non-payment of the 2017 Loan Agreement. *See QuarterSpot, Inc. v. Bright Kids NYC, Inc., and Bige Doruk*, Case No.:CL19000811-00; ECF No. 30-1 ("Virginia Compl."). Specifically, that complaint alleges that Bright Kids breached the 2017 Loan Agreement

---

[1] The Loan Agreement is attached as an exhibit to the Second Amended Complaint. [ECF No. 30-6]. The Loan Agreement states that the interest rate of the 2017 Agreement is 31.70%. Loan Agreement at 12. Defendants do not dispute the interest rate of the loans, either as stated in the Loan Agreement, or as calculated by Plaintiffs in the Second Amended Complaint.

with QuarterSpot by defaulting on the loan and failing to make payments. *See* Virginia Compl. ¶ 12.[2]

Thereafter, Plaintiffs filed a putative class action complaint against QuarterSpot and John and Jane Doe investors in New York Supreme Court. ECF No. 1-2. That case was removed to this Court, where Plaintiffs now seek a declaratory judgment that all business loan agreements entered into by Plaintiffs and a putative class are void for usury. *See* ECF No. 1; Second Am. Compl. ¶¶ 94-97.

Defendant has moved to dismiss the case. Defendant argues that the Court should decline to exercise jurisdiction over Plaintiffs' claims because there is a prior pending case in Virginia involving the same parties, transactions, and theories. Def. Mem. at 3-5. Defendant also moved under Federal Rule of Civil Procedure 12(b)(3) to dismiss for improper venue, arguing that the contract contains a forum selection clause mandating that the case be litigated in Virginia. Def. Mem. at 5-7. Finally, Defendant argues that the Plaintiffs' claim is barred by the statute of limitations. Def. Mem. at 13-14.[3] For the reasons discussed below, Plaintiffs' Second Amended Complaint must be dismissed.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to move to dismiss a claim based on "improper venue." When considering a motion to dismiss under Rule 12(b)(3), the Court must accept the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Person v. Google, Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).

---

[2] The Court may take judicial notice of state court filings. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

[3] Because the Court concludes that abstention is warranted, the Court does not address Defendants' statute of limitations argument.

The Court may also consider facts outside the pleadings raised in the affidavits in support submitted by both parties. *See TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (court may rely on pleadings and affidavits).

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a district court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." A party seeking a declaratory judgment is not, however, absolutely entitled to maintain the declaratory judgment action it brings. Instead, the Act "vests a district court with discretion to determine whether it will exert jurisdiction over a proposed declaratory action or not." *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). To that end, the Supreme Court has recognized that courts may abstain in declaratory judgment actions, as "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (interpreting *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)). A district court may not abstain where "a plaintiff does not seek purely declaratory relief, but also [seeks] damages caused by the defendant's conduct" or calls for resolution of "novel questions of federal law." *Kanciper v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013); *Youell v. Exxon Corp.*, 74 F.3d 373, 374 (2d Cir. 1996).

## ANALYSIS

The Court must first satisfy itself that venue in this Court is proper, and the Court should exercise jurisdiction over a Defendant that resists. Then, the Court must determine whether the

cause of action asserted here, which is a mirror of claims that are also pending in state court in Virginia, should be stayed or dismissed. The Court addresses each in turn.

### I. THE FORUM SELECTION CLAUSE DOESN'T RENDER VENUE IN THIS COURT IMPROPER

Defendant objects to New York as the proper venue for this action under Federal Rule of Civil Procedure 12(b)(3) based on a forum selection clause in the Loan Agreement. Def. Mot. at 1; Def. Mem. at 5. Defendant asserts that the Loan Agreement's forum selection clause is mandatory and directs that the courts of Virginia should resolve this dispute. *See* Def. Mem. at 5-7.

The Loan Agreement, which was attached to the Second Amended Complaint, states in a section labeled "**VIRGINIA GOVERNING LAW, CHOICE OF VIRGINIA FORUM**" that the Parties "expressly consent to Virginia law and forum" and "[a]ny arbitration as provided for in [the Loan Agreement] will take place in the state of Virginia." Loan Agreement [ECF No. 30-6] at 9. Notwithstanding Defendant's contention, this forum selection clause is not mandatory under Second Circuit law.

The question of whether a forum selection clause is mandatory turns on whether "the parties are *required* to bring any dispute to the designated forum or simply permitted to do so." *Banca Di Credito Cooperativo di Civitanova Marche e Montecosaro Soc. Cooperative v. Small*, 852 Fed. Appx. 15, 19-20 (2d Cir. 2021) (emphasis in original). A forum selection clause "is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). On the other hand, a "permissive forum clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." *Id.* A clear expression of mandatory forum selection includes, for example, words

such as "shall," "sole," and "solely." *Small*, 852 Fed. Appx. at 20. That is not the case here. The language of the forum selection clause in the Loan Agreement provides that Bright Kids "consents to Virginia law and forum," but not that the *only* available forum is Virginia, or that Virginia is the *exclusive* forum. Loan Agreement at 9. Absent such compulsory language, the Court cannot conclude the forum selection clause is mandatory.

Defendant maintains that the clause is nonetheless mandatory because it states that any "arbitration as provided for in [the Loan Agreement] *will* take place in the state of Virginia." Def. Mem. at 6 (emphasis added). Defendant cites a Washington state court in support of its proposition that "will" suggests mandatory forum selection, or compels the conclusion that forum selection is mandatory. Def. Mem. at 6. The Court finds this unpersuasive. As stated, the Loan Agreement does not state that Virginia is the sole forum in which a case may be brought. *See Small*, 852 Fed. Appx. at 20. Further, to the extent that "will" constitutes mandatory language, the sentence on which Defendant relies states that "*arbitration* as provided for in [the Loan Agreement] will take place in Virginia." Loan Agreement at 9. The Loan Agreement expressly includes an arbitration clause. *See* Loan Agreement at 8. The language of the purportedly mandatory forum selection clause thus supports only that, to the extent the arbitration clause is implicated, arbitration "will" take place in Virginia. But the forum selection clause does not indicate that *litigation* must be brought in Virginia. *See Constellation Energy Commodoties Group Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 211, 221 (S.D.N.Y. 2011) (distinguishing arbitration from litigation in choice of law provision).

Because Defendant challenges *venue* in this Court solely on the basis of the forum selection clause, an argument the Court rejects, the Defendant does not dispute that it is subject to personal jurisdiction. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998)

6

("The requirement that a court have personal jurisdiction is a due process right that may be waived either explicitly or implicitly."); Fed. R. Civ. Pro. 12(b)(2).[4] Thus the Court concludes that venue is proper and the Defendant is subject to personal jurisdiction.

## II. ABSTENTION OVER THIS DECLARATORY JUDGMENT ACTION IN FAVOR OF THE PRIOR PENDING VIRGINIA CASE IS WARRANTED

This case involves a request for a declaratory judgment that the QuarterSpot Loan Agreements are void because they seek to impose interest above the 25% annual interest cap in the N.Y. Penal law. *See* Second Am. Compl. ¶ 95. Usury laws are designed "to protect desperately poor people from the consequences of their own desperation" by providing an interest rate ceiling on loans. *See Schneider v. Phelps*, 41 N.Y.2d 238, 243 (1997). As Plaintiffs put it, by suing in states other than New York when a borrower defaults, QuarterSpot is "attempt[ing] to avoid the criminal usury laws of New York." Second Am. Compl. ¶¶ 29, 81, 90; Pls.' Opp. at 6. New York law provides for a "criminal usury cap" which makes knowingly charging or collecting interest at or above 25% per year a felony. N.Y. Penal Law § 190.40.

Under New York law, criminal usury is a *defense* available to corporations in an action seeking to recover on a loan. N.Y. Gen. Oblig. Law § 5-521(3) (describing criminal penalty as a defense); *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (criminal "[u]sury is an affirmative defense."); *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802, 804 (1st Dep't 1991) (statutory corporation exception is "strictly an affirmative defense to an action seeking repayment of a loan."); *Hammelburg v.*

---

[4] Defendant moves in the alternative to transfer venue under 28 U.S.C. § 1404(a). Because the clause is not mandatory, the Court declines to transfer venue solely on the grounds of the forum selection clause. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (factor in assessing whether transfer is warranted includes "whether the clause is mandatory.").

*Foursome Inn Corp.*, 54 N.Y.2d 580, 585 (1981) (defendant sought "leave to amend the answer to assert the affirmative defense of criminal usury.").

However, in this case, Bright Kids and Mr. Doruk are the plaintiffs, and seek to invoke the New York usury cap to assert an affirmative cause of action for declaratory relief, not to raise usury as a *defense*. Plaintiffs themselves acknowledge that the criminal usury law they seek to avail themselves of is a defense. *See* Pls.' Opp. at 12 (arguing no statute of limitations issue because usury here is used as a defense). Plaintiffs cite no authority for the proposition that the criminal usury cap may be used as anything other than a defense. Notably, in the earlier filed case in Virginia, QuarterSpot has sued for nonpayment on the loan and Plaintiffs there raise usury as an affirmative defense. "[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience [or] special circumstances . . . giving priority to the second." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989).

Moreover, under the so-called "*Brillhart/Wilton*" abstention doctrine, "[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 104 (2d Cir. 2012) (internal quotations omitted). The Second Circuit has laid out a set of factors in *Dow Jones & Co v. Harrods* to evaluate the applicability of the *Brillhart/Wilton* abstention doctrine in connection with the exercise of discretion in Declaratory Judgment Act cases. 346 F.3d at 359; *see also Niagara Mohawk Power Corp.*, 673 F.3d at 105. As the Second Circuit has defined the analysis:

> Our test "asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and "(2) whether a judgment would finalize the

controversy and offer relief from uncertainty." Other circuits have added additional factors: (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata,'" (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court," and (5) "whether there is a better or more effective remedy." *Niagara Mohawk Power Corp.*, 673 F.3d at 105 (quoting *Dow Jones*, 346 F.3d at 359-60).

These factors counsel abstention in this case. "[T]he overarching principle guiding the district court's analysis is 'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court.'" *Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F. Supp. 2d 292, 307 (S.D.N.Y. 2012) (quoting *Wilton*, 515 U.S. at 282). Plaintiffs bring this case seeking a declaration that would permit the avoidance of the contract on the grounds of usury. Such an avoidance to the enforcement of the contract is an affirmative defense for corporations under New York law, but there is no authority for it to serve as a basis for an affirmative claim. *See* N.Y. Gen. Oblig. Law § 5-521(1)-(3) (prohibition on corporate use of "defense of usury in any action" "shall not apply to any action in which a corporation interposes a defense of criminal usury" under the Penal Law.) Given that Plaintiffs cannot predicate a cause of action on the New York usury statute, this Court cannot grant the relief Plaintiffs seek. Further, the defense of usury is currently pending in Virginia state court. *See* ECF No. 33-4 at 5 (raising defense in Virginia case that QuarterSpot's "claims [for breach of contract] are barred because the [Loan Agreement] is usurious.").

As such, the first two abstention factors weigh in favor of abstention, *Niagara Mohawk Power Corp.*, 673 F.3d at 105, since this case would not serve a useful purpose in clarifying or settling the legal issue involved nor finalize the controversy, and the applicability of usury as a defense to the enforcement of the contract can only be resolved in the earlier-filed Virginia the state court action. *See Soros Fund Mgmt. LLC v. Tradewinds Holdings, Inc.*, 2018 U.S. Dist.

LEXIS 40164, at *8 (S.D.N.Y. Mar. 12, 2018) (a "declaratory judgment would not serve a useful purpose because there is an earlier filed case on the merits pending in . . . state court."); *Gates Constr. Corp. v. Koschak*, 792 F. Supp. 334, 336 (S.D.N.Y. 1992) ("One basis for declining to hear a declaratory judgment action is the existence of a pending action in another court that will resolve the controversies between the parties."); *TIGS Ins. Co. v. Fairchild Corp.*, 2008 U.S. Dist. LEXIS 41452, at *6 (S.D.N.Y. May 23, 2008) (noting "order of filing" considered by courts in *Wilton* abstention). Indeed, a declaratory judgment has "no useful purpose" when another proceeding will settle the claims at issue. *Amusement Indus. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010).

The fourth factor further favors abstention because permitting parallel proceedings regarding the validity of the contract (which, as discussed, is not properly before this Court and is a matter of state law) would almost inevitably cause friction with the Virginia state court. "[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference . . . if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283; *see also Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996) ("Declaratory judgment actions which have as their underlying basis rights that are essentially governed by state law present particularly appropriate cases for application of the abstention doctrine.").

The third factor also militates in favor of abstention. It is clearly Plaintiffs' hope to obtain a declaratory judgment that the contact is void in New York, and then argue that ruling has a preclusive effect on the issue in the Virginia state court action. *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of

preclusion applied by the State in which the rendering court sits."). Plaintiffs plainly engage in jurisdictional fencing. The issue of whether the Loan Agreement is void for usury was already at issue in Virginia when Plaintiffs filed their case in New York. Plaintiffs nonetheless ran to this Court seeking a declaratory judgment (a remedy, not a cause of action) in the hope that this Court might beat the Virginia court to a ruling. The Court declines to entertain such gamesmanship, particularly where it cannot afford the relief Plaintiffs seek. *See supra* at 7-8.

Virginia law prohibits business loans in excess of $5,000 from being voided for violation of a usury statute. Va. Code Ann. § 6.2-317(B). It is undisputed that the loan values involved in this case exceeded $5,000. *See* Second Am. Compl. ¶¶ 36, 48, 50, 62, 65. It is also undisputed that the loans were business loans. *See* Second Am. Compl. at 95 (requesting relief from the "Business Loan Agreements"); *see also* Va. Code Ann. § 6.2-317(A)(1) ("A loan shall be deemed to be for business or investment purposes if it is not for personal, family, or household purposes."). The 2017 Loan explicitly refers to the agreement as a "business loan." Loan Agreement at 1. Plaintiffs themselves also admit that their claim would be unavailable in Virginia. *See* Pls.' Opp. at 8 (stating "Virginia . . . has no criminal usury laws concerning business transactions."). Thus, Plaintiffs' current cause of action to void the Loan Agreements as usurious is plainly unavailable in Virginia, and the Court cannot grant the relief Plaintiffs seek if Virginia law governs the Loan Agreements. *See* Def. Mem. at 12 (dismissal appropriate if Virginia law applies). There can be no clearer set of facts. Plaintiffs arrive in New York solely to avoid the state law of Virginia. This action is nothing more than an improper attempt to force a race to *res judicata*.

In weighing abstention, some courts in this Circuit also look to the choice of law that applies to the dispute. *See TIGS, Ins. Co.*, 2008 U.S. Dist. LEXIS 41452, at *6. The Parties

dispute whether this action should be governed by the substantive law of New York or Virginia. *See* Def. Mem. at 7-8 (citing agreement choice of law clause electing Virginia law); Pls.' Opp. at 7-11 (arguing choice of law clause would be void as against New York public policy, and applying New York law). The existence of this choice of law dispute does not counsel against abstention, and the Court has not examined the question of the appropriate choice of law for this action. The Court has confidence that the Virginia state court can perform its choice of law analysis and apply the appropriate state law to the action before it.

Finally, the Court is of the strong view that the remedy Plaintiffs seek here (avoidance of the contract) is more readily available in Virginia, and properly adjudicated in the earlier-filed state court action, where the issue of usury has already been asserted as a defense to an affirmative claim on a contract.

\*   \*   \*

In sum, because the enforcement of the contract is currently pending in the Virginia state court action in which usury is raised as an affirmative defense, the Court here abstains in deference to the earlier-filed Virginia state court case. The Supreme Court has stated that when a court exercises its discretion to abstain from entertaining a declaratory judgment action, it may choose either "to stay or to dismiss [the] action." *Wilton*, 515 U.S. at 288; *see also ICBC Std. Sec., Inc. v. Luzuriaga*, 217 F. Supp. 3d 733, 739 (S.D.N.Y. 2016) ("A court exercising discretion to abstain under *Wilton* may either stay or dismiss the action."). "Where the entirety of a plaintiff's claim constitutes a defense in the parallel action, there is no danger that plaintiff will be prejudiced by dismissal." *Luzuriaga*, 217 F. Supp. 3d at 739. As such is the case here, dismissal is warranted.

## **CONCLUSION**

For the foregoing reasons, the Court cannot grant Plaintiffs the relief they seek, and abstains from exercising jurisdiction, deferring to the earlier filed Virginia case between the same parties involving the same issues. Accordingly, Defendant's Motion to Dismiss is GRANTED. The case is dismissed without prejudice. The Clerk of the Court respectfully is requested to terminate the motion at ECF No. 31 and close the case.

**SO ORDERED.**

Date: **September 20, 2021**  
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**